668 S.E.2d 775 (2008)
In the Interest of K.J., a child.
No. A08A0932.
Court of Appeals of Georgia.
October 21, 2008.
Dante L. Hudson, for appellant.
Stephen D. Kelley, District Attorney, W. Franklin Aspinwall Jr., Assistant District Attorney, for appellee.
BERNES, Judge.
On appeal from an adjudication of delinquency for terroristic threats, K.J. argues that the evidence was insufficient. We affirm.
On appeal, we view the evidence from an adjudicatory hearing in the light most favorable to the prosecution to determine whether a rational trier of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged. The evidence is examined under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) with all reasonable inferences construed in favor of the juvenile court's findings.
(Citations omitted.) In the Interest of M.F., 276 Ga.App. 402, 402-403(1), 623 S.E.2d 234 (2005).
So viewed, the record shows that a math instructor called the assistant principal at the school K.J. attended and told him that the 14-year-old girl was "out of control." K.J. then told the instructor a number of times that "if you write me up again[,] I'm going to get you." As the instructor escorted K.J. to an administrator's office, K.J. started pounding her clenched fist into her other hand, exclaiming over and over, "I swear to God, I'm going to get [the instructor]." Other teachers heard K.J.'s threats, saw her pounding her fist into her other hand, and confirmed that she was "screaming" and "out of control." At one point K.J. shouted that she was "going to snap" and that she was "going to get her [(the instructor)]." It took more than 20 minutes for the *776 instructor and other teachers to stop K.J.'s outbursts.
OCGA § 16-11-37(a) provides that
A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence ... with the purpose of terrorizing another.... No person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated.
The crime of terroristic threat "focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize." (Citation omitted.) Boone v. State, 155 Ga.App. 937, 939(2), 274 S.E.2d 49 (1980). See Lanthrip v. State, 235 Ga. 10, 12, 218 S.E.2d 771 (1975). Moreover, "[d]irect evidence that the threats were made for the purpose of terrorizing another is not necessary if the circumstances surrounding the threats are sufficient for a [trier of fact] to find the threats were made for such a purpose." (Citation omitted.) Boone, 155 Ga.App. at 939(2), 274 S.E.2d 49
The evidence here, including K.J.'s contemporaneous acts of pounding her fist into her hand and exclaiming that she was "going to get" the instructor, was sufficient to sustain the juvenile court's finding of delinquency as a result of making a terroristic threat. See Denson v. State, 259 Ga.App. 342, 343, 344-345(1), 577 S.E.2d 29 (2003) (sustaining conviction based upon defendant's statements that "he had a bomb" for the victims and that they should "check their mailbox[es]"); Shepherd v. State, 230 Ga.App. 426, 496 S.E.2d 530 (1998) (defendant's statement that "he was going to stomp [the victim's] butt when he saw him" was a terroristic threat) (punctuation omitted).
The dissent contends that K.J.'s words were innocuous and did not rise to the level of terroristic threats as a matter of law, but that determination was for the trier of fact under the circumstances of this case. Lanthrip, 235 Ga. at 12, 218 S.E.2d 771. Georgia law does not require that the accused actually take an overt, physically aggressive action toward the victim in order to complete the crime. See id. ("When the communication of the threat is done to terrorize another, the crime is complete."); Denson, 259 Ga.App. at 344-345(1), 577 S.E.2d 29 (sustaining conviction even though verbal threats were made to an uninvolved third party outside of the presence of the victims and did not include any physical aggression); Shepherd, 230 Ga.App. at 427, 496 S.E.2d 530 ("The threat of physical violence directed against an absent third party is clearly within the conduct prohibited by the criminal statute."). The juvenile court was authorized to conclude that K.J.'s conduct constituted a threat directed toward the instructor for the purpose of terrorizing her. Denson, 259 Ga.App. at 344-345(1), 577 S.E.2d 29; Shepherd, 230 Ga.App. at 427, 496 S.E.2d 530.
Judgment affirmed.
BARNES, C.J., and BLACKBURN, P.J., and ANDREWS, J., concur.
JOHNSON, P.J., RUFFIN, P.J., and PHIPPS, J., dissent.
RUFFIN, Presiding Judge, dissenting.
Because the evidence in this case does not authorize K.J.'s conviction for committing a terroristic threat, I am compelled to dissent.
The evidence shows that Susan Cleveland, a math instructor for the Glynn County school system, had K.J. as a student both in the early morning and in the early afternoon. According to Cleveland, K.J. is very bright. On October 11, 2007, when K.J. arrived at school, she demonstrated some behavioral problems, including becoming "loud and argumentative." Thus, Cleveland called the assistant principal and reported that K.J. was "out of control," and he spoke to the child on the phone; afterward, K.J. told Cleveland that, "I swear, if you write me up again[,] I'm going to get you." When K.J. returned for the afternoon period, her behavior continued, and she repeatedly told Cleveland that she was "going to get [her]." After the third such threat, Cleveland told K.J. that she was going to "write her up" and escorted her to the guidance office. As they were walking, K.J. pounded her fist into her *777 hand, repeating that "I swear to God, I'm going to get Ms. Cleveland."
Cleveland testified that at one point, after K.J. had threatened to "get her" and she had reported the conduct to the administration, she told "K.J. to stop because that was a threat. Those were my words to her. I said: You're not allowed to do that; you're not allowed to say that; that can be taken as a threat." A school counselor also testified, and said that although K.J. was screaming and "emotionally out of control," that she was not physically out of control.
I do not believe that this evidenceeven when construed favorably to the trial court's judgmentsupports K.J.'s delinquency adjudication for making a terroristic threat. In determining whether the use of words amounts to criminal conduct, we must construe the statute narrowly to ensure that we are not abridging the speaker's constitutional rights.[1] OCGA § 16-11-37(a) provides that "[a] person commits the offense of a terroristic threat when ... she threatens to commit any crime of violence ... with the purpose of terrorizing another."[2] Here, K.J. threatened generally to "get" her teacher after being faced with disciplinary action. But here, such ambiguous words are not sufficiently specific to constitute the threat of a violent crime. Under limited circumstances, we have held that otherwise innocuous wordswhen combined with some other actionmay constitute the crime of terroristic threats.[3] For example, we have upheld a conviction where a threat to "get" the victim was accompanied with the threat to "`beat her ass'" and the yanking of a telephone cord from the wall.[4] We also have found sufficient evidence of a terroristic threat where the perpetrator threatened both to "get" the victims and to "`get a gun or something like that.'"[5] And a terroristic threat conviction was authorized where the defendant threatened to "get" the victim after having already threatened the victim's life and assaulted her with a gun.[6] Here, K.J. merely threatened to get her teacher while pounding her fist into her hand. But there is no evidence that this fist-pounding was directed toward Cleveland, as K.J. made no overt physically aggressive action toward her teacher. Under these circumstances, K.J. cannot reasonably be said to have threatened to commit a crime of violence.
Moreover, the evidence does not support the conclusion that K.J.'s actions were intended to terrorize her teacher. Rather, the evidence shows that K.J. was angry and emotionally out of control. Under these circumstances, I fail to see the requisite intent to commit the felonious act of making a terroristic threat.[7]
In dissenting, I am nonetheless mindful of the difficulties in school systems across this country regarding rampant student violence, and I in no way condone such conduct. Indeed, I certainly think that K.J. could have been convicted for disrupting a public school.[8] But I do not believe that K.J.'s actions equate to making a terroristic threat. Accordingly, I dissent.[9]
*778 I am authorized to state that Presiding Judge JOHNSON and Judge PHIPPS join in this dissent.
NOTES
[1] See Lundgren v. State, 238 Ga.App. 425, 518 S.E.2d 908 (1999) (insufficient evidence that defendant uttered "fighting words" in violation of OCGA § 16-11-39).
[2] (Emphasis supplied.)
[3] See Thomas v. State, 254 Ga.App. 226, 228-229(1), 561 S.E.2d 444 (2002); Wilburn v. State, 223 Ga.App. 476, 476-477(1), 477 S.E.2d 909 (1996); Cook v. State, 198 Ga.App. 886, 887(2), 403 S.E.2d 872 (1991); see also In the Interest of J.L.W., 213 Ga.App. 630, 631 (2), 445 S.E.2d 575 (1994) (sufficient evidence of terroristic threat where juvenile defendant cursed, screamed, referred to her connection to a violent youth gang, kicked open the door to the room containing the victim, and blocked the victim's exit).
[4] Thomas, supra.
[5] Wilburn, supra.
[6] See Cook, supra.
[7] See In the Interest of M.S., 292 Ga.App. 127, 128 (2), 664 S.E.2d 240 (2008).
[8] See OCGA § 20-2-1181.
[9] See In the Interest of M.S., supra (delinquency adjudication for terroristic threat reversed where there was no evidence that defendant demonstrated threatening behavior toward the alleged victim); Stephens v. State, 271 Ga.App. 509, 510, 610 S.E.2d 143 (2005) (conviction for making a terroristic threat reversed where State failed to show that defendant made a threat intended to terrorize the victim).